Good morning, Your Honors. May it please the Court, my name is Kelly Wirth. I'm here on behalf of the appellants Leonard Vare, Rosemary Seals, and Kelly Bellinger. At the outset of this, if I do nothing else today, I would like to argue for the successful application of the Turner Standard to this case. However, there is a motion currently before the Court, and it's a motion I submitted last week to supplement the record accordingly. If it please the Court, I'd like to address that at this time. As the Respondents and the cross-appellants have pointed out, I sought to introduce records that were filed within the district court that went outside the certified docket sheet in this matter. The reason for that being is that there were certain misstatements made at the district court level and now here at the appellate level. Were these documents in front of the district court at the time that court made its decision? No, Your Honor. It was made subsequent to the entrance of the order on November 18, 2005. The reason, I believe that the submission of these or the supplementation of these records is appropriate because it squares with the Mangini case I cited, where a motion to supplement was allowed to clear up misstatements made before that district court at that time. What these documents do is, number one, they clarify that the Critten-Brink document, as originally argued at the district court, these were documents for the inmate, John Withereau, to work on, and they were being submitted as such. That was the intent to get him in there. When asked specifically at the hearing on October 27, both replied, well, those records are merely for my client, John Withereau's, information. He referred the case to me. Well, which issue on what issue on appeal to these are these probative? It goes to the issue of the, our argument was that these gentlemen are in a business relationship, in a business or business activity that runs without a Nevada revised statute 209.4615. I have a theoretical question, and then I'll follow it up with a practical question. It seems to me that in theory, the kinds of documents that an inmate is entitled to receive from his lawyer would include anything that has to do with his current cases, which I think everybody in this case agrees with. If he has a current case pending, that's legal now. And it would seem that that would extend if the person is thinking about filing a lawsuit himself, that he can communicate with his lawyer about that. But how, if that's so, how do you decide what materials are relevant to that or that fall in the category? Let's say he communicates with his lawyer and says, I'm thinking of filing something about the lousy food. Let's talk about that. And the lawyer can send stuff about that topic, I would think. And how do you decide if it falls within that or not? Your Honor, as recognized by Judge Reed at the hearing, this is a very unique relationship to these two Respondents, Mr. Evans and Mr. Witherell. I don't want you to go too far from my question. Do you agree that a lawyer can communicate with a client, whether or not the client is also a friend, about that person's own possible lawsuits that they're thinking about filing? I would agree to that point. So now how do you tell? That's the hard part. Exactly. And Judge Reed has formulated an order that we can't tell, and we already know that it's been violated, what I claim to be violations of Judge Reed's order, by the Respondents. What harm is there in sending material where the names of the individuals have been redacted? You know, here's some civil rights claims of X versus Y, and they have to do with whatever they have to do with. What's the harm? It's a very good question. And I believe Judge Reed sanitized the testimony to a large degree. The harm is, and it was testified at length by Warden Varee and the Associate Attorney at the hearing, that these are security issues. Even with the people's names redacted? Exactly. Why? Because what happened, and the best example in this case was one of the violations was the Crittenbrink document. This was entered November 18th. Three days later, Mr. Evans sent this Crittenbrink document in. And in that Crittenbrink document was a pre-sentence investigation report which had information, Social Security numbers, addresses, whatever. Now, the problem with that, yeah, you can strike the names, but he's still getting the information. And that presents a big problem for the security of the institution. Can you help me with the nature of, if I understand it, when this person was not in prison, he was engaged in a paralegal type of business? Is that? Yes. Can you enlighten me a little bit on the nature of that business? Was he doing paralegal work for prisoner claims? Was he doing paralegal work for negligence? What was, what was? Okay. The nature of his work goes, is inmate-related. It goes to private practice. It, from what I can tell from the testimony began in the latter part of the 80s, he then obtained business licenses. Yeah. But it is inmate-related? I mean, it has to do with prison? Some of it is, Your Honor, from what we can tell. Some of it. Now, Mr. Evans expressly testified at the hearing that, I'm going to feel free to give him private citizen documents to work on. That, in and of itself, has been our position, is improper. In 1994, I submitted into evidence at the hearing a memo by inmate Witherow where he stated, this is a big security issue. I'm receiving information regarding inmates with sex offenses, inmates with AIDS. I'm getting information regarding correctional staff. And he also feared for his life. He recognized it there that this was a security problem. I think I even asked, well, what's changed since then? And there was no credible response. Again, I'm having trouble with Judge Reed's order at this point. And I caught it last night as I reviewed the briefs. I refer to the judge's order as requiring a strict scrutiny analysis, and I also refer to it as a heightened scrutiny. It seems like we've almost come full circle back to Pecuniere v. Martinez, where it was held, they said, censorship is justified if it furthers a substantial government interest, and it must be no greater than is necessary to further the legitimate governmental interest involved. Well, that's what I saw on the face of Judge Reed's order or his rationale. But if you read on, he then refers to a least restrictive means test. I don't know how that squares. It seems like we've gone beyond Pecuniere v. Martinez in the context of legal mail. I will submit to the Court, Judge Reed indicated that he cited a district court case here, Burt v. Carlson, and he thought it was indicative of how the Ninth would go on this issue. I disagree with Burt v. Carlson was wrongly decided. It should have been before you at some point. They, in that case, the Court applied the substantial interest to incoming mail and outgoing mail. Pecuniere v. Martinez applied to outgoing mail, as you read Thornburg v. Abbott. Thornburg came back, applied Turner v. Safley, and said, we have a greater interest in looking at the incoming mail issue, and there's more scrutiny to the outgoing because there's a less they made it to the courts made a distinction at that point. The Ninth Circuit, coincidentally enough, Evans, Mr. Evans, and Mr. It's called Witherow v. Path. And in that case, the Ninth Circuit expressly rejected a heightened scrutiny-type analysis. And part of that decision also rejected some of the law that Judge Reed relied on. And specifically, it said, furthermore, the Fifth Circuit itself has expressly repudiated Sterrett and its progeny. The Brewer Court concluded that the more recent analysis by the Supreme Court in Turner v. Safley and Thornburg v. Abbott apply to all, all prisoner mail cases. And I would submit that it's no different than a, an attorney, legal mail coming from an attorney into the institution and a, say, the president of the Aryan Brotherhood sending in letters calling shots. Well, I'm not sure about that. I took it to the extreme, Your Honor, granted. Again, there's been an issue of whether the Nevada Department of Corrections administrative regulations created a policy or a guideline to go by in this instance, and I would submit it did. AR-722 allows when there is an abuse by the attorney for inducing an inmate to break regulations, rules, policies, we may impose such sanctions. In response, we're going back, and then I think we have your argument, and we'll give you time. You have time to respond. But going back to Judge Graber's question about even if they redact the names, what is the problem? And you said, well, there were some Social Security numbers and other identifying information that weren't covered by that. Suppose that they were modified to cover that. What would be the problem, then? Then we run afoul of Wolfe v. McDonald, scanning of the mail. We would have to be refined to reading this mail instead of scanning it as we have done. It will require additional efforts on our part to review. And let me tell you, since the entry of this order, we have been deluged by Mr. Evans' correspondence in, and we've seen the related to your litigations is how I read this. Well, sure enough, here comes Crittenbrink. Then we, and again, getting back to the supplement, I think we're going to have to be refined to read this mail. Sotomayor, that seems to me to be a problem, no matter how this is worded. Let me explain what I mean by that and see what your response is. Let's assume that there were an order in this case that said the only mail that can be received is legal mail directly related to existing ongoing cases of your own, which is kind of a bare minimum, I would think, of the definition of legal mail. What's to prevent someone from putting in anything they want to put in anyway and saying that? In other words, it can still, no matter how tightly the order is worded, someone can still get around it. So I'm not sure that the fact that someone is trying to get around it should define the right. I don't know if I'm making myself clear, but there's one question is, what is he entitled to do? And then the question is, is he abusing what he's a separate question? Well, we're seeing this is a difficult issue. We, when we were arguing at the end, nobody had a solution, okay? Wouldn't it help if you had a good definition in your regulations of what legal mail is? Your Honor, I believe we do have a very workable A.R. This is such a unique, this is the only instance we can think of where a private attorney is using an inmate paralegal to do work. I mean, just the fact that the ---- But let's get back to what the current situation is. Unless I've missed something, the current situation simply says legal mail is mail from a lawyer. Right. And that has worked for us, and but not in this case. Now, but Judge Reid has also recognized, I would point out, that all the mail that Mr. Evans is ---- wants to send in isn't going to be legal mail. And I believe Keenan v. Hall, a case that I cited in my brief, also says, well, public ---- this is a very important side issue on this, what constitutes legal mail. One, they've argued anything public record, anything public record can come in. Well, the problem with that is public records are court filings with information regarding inmates and their offenses. Well, but to some extent that, if they've gotten to the point of being actual cases, that information is available anyway if someone goes to the law library and decides to look up all their inmate friends and see what happened to their cases. They don't have Internet access, and they do ---- but they do have access to published cases. And that was the distinction that Judge Reid also made. If they're published cases, get them. And we, again, we would have no problem. But since then, we have seen Mr. Witherow attempt to obtain from the Nevada Supreme Court what is called a bifurcated, it was a case called bifurcated, and that ended up being an unpublished case. We are trying to keep this information regarding other inmates out. And on the other hand, it's also private citizens now, as represented by Mr. Evans. So what is it that you ---- what is your bottom line here? What do you want to ---- Your Honor, the bottom line is Turner v. Saffley must apply to all inmate legal mail. If I could have ---- if I am successful in arguing that point and having the case remanded for a determination under that standard with what I've got today, I would consider this a very successful. Okay. Thank you. Thank you. We'll give you a couple minutes on rebuttal. Good morning. My name is Robert R. Hager. I represent Don Evans and John Witherow. Mr. Evans would like to argue, would like me to reserve five minutes at the end if that would be allowable. Okay. Don Evans is an attorney in Reno. He and I both became licensed in October of 1979 to practice law in the State of Nevada. Mr. Witherow is an inmate in the Nevada prison system. The standard on appeal on a preliminary injunction is that the court will only reverse a grant or a preliminary injunction only when the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact. Counsel, I have a question under that standard about the district court's conclusions concerning whether your clients were engaged in business within the meaning of the Nevada statute. The district court seemed to believe that engaging in business required the payment of money contemporaneously or reasonably contemporaneously for it to be engaging in business within the meaning of the statute. But my reading, at least, of the legislative history is that it was intended to be a little broader than that, and it certainly doesn't by its terms require the payment of money. Why isn't the correspondence, insofar as it is not related directly to existing cases of Mr. Witherow's, related to the business of providing advice or paralegal services to Mr. Evans? The court specifically found that the State had not shown that there was a business relationship that existed between, that exists at present between the two clients. That's a legal conclusion that they didn't carry their burden of proof, but that legal conclusion is based on an understanding of the statute that requires a showing of money-changing hands. So if money doesn't have to change hands, why wouldn't that have to go back to the district court for further consideration? I don't know that I would, that it's a fair characterization to say that it's based on a conclusion that, or on the fact that money didn't change hands. It was based on a full-day evidentiary hearing, and with all parties having full opportunity to testify and the court being fully apprised of all the evidence that relates to the relationship between Mr. Evans and Mr. Witherow. Someone like Mr. Witherow, who is active in terms of litigation inside the prison, represented, has an attorney-client relationship with Mr. Evans, and is involved actively in issues that relate to prisoners' rights, including classification and other issues that are active in the courts. If he communicates with Mr. Evans in connection with those issues, and Mr. Evans provides him with cases that in Mr. Witherow's opinion relate not only to the case in which Mr. Evans represents Mr. Witherow, but also in other matters in which Mr. Witherow has an interest and Mr. Evans has an interest, that doesn't constitute a business relationship. Is it your position that as long as they're friends with mutual interests, the fact that Mr. Evans is a lawyer entitles him to send in pretty much anything he wants to do, just because, you know, 400 volumes on quilting or whatever it is they're mutually interested in? No, I don't think that. It's legal mail because he's a lawyer? No, and I've certainly never taken a position before this court or any court that any quilting volumes would be at issue in this case. So what makes this legal mail if it is not directly related to Mr. Witherow's own ongoing litigation? Well, it makes it legal mail if, for example, it's published opinions and names have to be redacted, if it's opinions that in the opinion of Mr. Evans as the attorney representing Mr. Witherow, they have an attorney-client relationship, that it is helpful for Mr. Witherow to see those legal, those court opinions, those decisions, and to get in a letter from Mr. Evans explaining how these decisions relate to the case in which Mr. Evans represents Mr. Witherow. Then why, if that's true, why does he have to see the underlying material? Why couldn't he just write a letter that says, I've reviewed seven new cases that bear on the possibility that you might sue for X and here's my discussion of the case law and why I think it helps you, and that's a four-page letter. Why all the attachments and stuff? What's the relevance of that? You know, and I guess maybe it's a matter of how people practice law. I send routinely copies of decisions to clients of mine to say, you might want to take a look at this decision. This is what this court has done in a case that relates to yours, and they get back to me sometimes with some insight as a result of their findings. And Judge Reed didn't limit published opinions, as I understand it. So published opinions are okay? Published opinions and other legal materials, so long as names are redacted so that they cannot be, so that Mr. Witherow cannot be engaged in this business. And that's what leads me to what I'm here to talk about today, which is that we have appealed that provision of the order. The provision of the order that we have appealed is set forth at page two of Judge Reed's injunction, in which he first enjoins the defendants and anyone acting in connection with the state from denying Plaintiff Witherow the receipt or forwarding of legal mail, which has been identified as such by the sender being Mr. Evans. When that mail contains names of parties in published cases and slash or when all other names of persons that are not directly involved in plaintiff's legal matters have been blacked out. The language is confusing. The result of that has been that the mail has been opened and videotaped since this order was entered. So it's not scanned. It's not just read. It's actually videotaped. There's a permanent electronic record made of the contents of the privileged communications between my clients in response to that wording in the order and how it's interpreted. So what makes them privileged if they're not about giving advice about his own matters? I mean, it's circular. To go back to my example, if the, you know, quilting patterns were labeled legal mail, confidential, do not open because I'm a lawyer, it doesn't really make them legal mail in content. So is it your position that simply everybody has to rely on the good faith of the lawyer and just go by his word that he says it's legal mail and that's the end of it? Well, I think that certainly creates a presumption that the contents of an envelope that is labeled as legal mail is legal mail. And if upon what is characterized as scanning, it's determined that, for example, it's a pleading or a court ruling and it's a letter that is from an attorney letterhead that is addressed to the inmate, then beyond that point, I don't know who else. Well, we recently published an opinion from this court that said that when the prison does not protect as privileged those items that were not related to their legal relationship, in other words, I mean, they were planning another crime together or something like that and that was perhaps not confidential, not protected. So clearly there are some circumstances in which just labeling it doesn't do it. So in your view, to what extent may the prison look at things to determine whether they are what they say they are and how do they know that they're actually confidential legal material? Well, that is up to the attorney to determine in terms of whether it's legal material or not. Ordinarily that is true. But the problem that I am having in this case is that you had a different kind of relationship as well. That is, you have had an attorney-client relationship, which is what you want to claim the benefit of here. But you've also had, as I understand it, an employer-employee relationship. And I don't see how you can say, well, as soon as he gets into prison, he's only a client and we have to ignore that and treat everything that comes from the lawyer as if it's legal mail even though on its face it relates to something that has nothing to do with this case. There's nothing that they've shown that relates in no way to legal issues that Mr. Adams has. No, no. This case, I said. I understand. But there's we're talking hypothetically here because there is nothing that has been presented at either in the trial court level or to this court in which we're talking about something that is not legal mail. We're also not. Well, yeah.  You're using the word. Well, that does not relate to. Legal mail versus mail having to do with legal subjects. Exactly. And. Has to do with legal subjects. That's the problem because the business that he was in was legal. But that business no longer exists. That's what the court found. No, the court didn't find that. That's what I was asking you before. The court found that the warden had failed to carry the burden of proof. That's not a finding of fact. That's a conclusion of law. And. And it's a little bit different than saying I specifically find that they were not engaged in a business relationship. That's not what the court said. The court said that the warden had failed to carry his burden of proof. And I think that's important because it didn't really resolve any credibility questions. It was a legal conclusion. And that's why I was concerned earlier about determining whether the payment of money or a thing of value is what the Nevada legislature cared about when it passed that statute. The legal. I mean, the history of that statute is replete with discussion of exactly what's going on here. Not wanting inmates to be involved in helping out people on the outside or relating to them about paralegal kinds of issues. That this was a big problem and they were trying to get at this very problem. The fundamental issue here, as Judge Reed points out repeatedly in his order, is the access of Witherow to the courts and his right to be represented by counsel. And that's what's being interfered with by the defendants. And it's being interfered with by the defendants who just claim it's a security risk without any specific findings. And to the extent that that conflicts with whatever interests or concern there might be in the prison system about somebody operating a paralegal business where they haven't shown that one exists, it's the fundamental right of Mr. Witherow of access to the courts and to be represented by counsel that is being jeopardized and that it was absolutely being interfered with as a result of this blanket ban that the defendants have imposed upon the legal male. There's more at stake here than just this particular issue and these particular defendants. I was on the Civil Justice Reform Act Committee in Nevada in the early 90s when the courts looked at and they appointed attorneys to advise them on how to reduce vexatious and meritless pro se inmate litigation. And Mr. Witherow is one of the people that can most effectively accomplish what, in fact, the end result that report in that district was, which is to have somebody who's sophisticated inside the prison system that is familiar with these issues face day to day with regard to classification and discipline and those kinds of issues in order to prevent numerous cases being filed that don't have merit. So his being having access to information that relates in Mr. Evans' opinion to the specific case that Mr. Evans represents him in that existed before this litigation began also furthers the interest, the public interest of having somebody that's familiar with those issues in other cases. The one case that's been discussed here, Crittenbrink. Crittenbrink isn't an inmate. He lived in the State of Washington when that decision was sent in. There was no security risk to the institution. This is a situation where it's a post hoc rationale. When this process began before the lawsuit was filed, the issue was solely with regard to the business issue. There was no allegation of any safety issues in the prison. Okay. Do you want to let your ---- I'm sorry? Would you like to ---- I think we understand your point. Would you like to permit your client to ---- Yes, I would. Thank you. May it please the Court. Thank you. I'm Don Evans. I want to point out initially that I have never been accused by the prison at any time in my 27 years as a lawyer of sending in anything that has, in fact, jeopardized the safety and security of any institution. I have never been accused of that. John has never been written up for that, as far as I know, for something that I have sent him. Now, the questions that you asked are right on point, which is where does the personal relationship end and the legal relationship begin? Absent something that I have done to violate prison regulations and jeopardize the safety and security of the institution, I should get the benefit of the doubt. I've never been accused of this. They've never identified anything that I have sent to Mr. Witherow as being, this is why this specific thing is a threat. It's always, well, it could. And this is why the injunction needs to be revisited. In our ---- and by the way, they talk about me violating the injunction. The injunction isn't directed toward me. I can't violate it. They have not moved for a contempt citation for me violating it. We have moved for two separate contempt citations against them, which have not been decided. Kagan. Does a prison have to have a track record of mothers of inmates bringing in contraband before it enforces a policy that says that the mothers, all visitors, including mothers, have to be searched and have to be limited to visits? No. I don't think that's the case. I don't think that's the case.  What I'm saying here is the relationship between a mother and a son is not privileged under the law. The relationship between a lawyer and a client is. Only insofar as it relates to legal advice. Well, I ---- Not relating to doing business together, not related to being buddies together. It only has to do with whether it's legal advice. Right. And how does the prison tell the difference when the friend or the employer is also a lawyer? If I have a legal relationship with John as I do and I'm representing him, then I should be given the benefit of the doubt to talk about that particular case and any other matter that I think may relate to that case, whether it specifically does or not. What's happening here is, for example, there's a case called the Phillips case, which was a class-action case in which the inmates litigated the conditions of confinement. It resulted in the Phillips consent decree. That has been litigated since about what's in there. Mr. Witherow had a copy of the docket sheet in the Phillips case. In our case, he has submitted as an exhibit in our case that docket sheet to one of our orders to show cause for contempt. It's then been filed with the court, stamped. I then take a packet, which includes that exhibit, and send it back to John in the prison. They refuse to give him the pages with the Phillips consent decree docket sheet on them because they say that that doesn't, quote, belong to him, that that Phillips consent docket does not, quote, belong to him. They similarly say any case that I send him that has any other name on it other than Mr. Witherow's, quote, does not belong to him. Our view is that if it's a pleading in a case that's been filed in the public record in a State court or a Federal court, unless it's been sealed, it is a public record. And Mr. Witherow is entitled to have that public record for whatever reason he deems fit. Is there a possibility that a public record in that instance could contain information? A remote possibility, yes. But a docket sheet usually doesn't have much on it. But my point is that they're using this. But what is the point of having the identifying information about persons other than your own client? Let's say you want to tell him about a civil rights case that's just come down in Washington State, and you're very excited about this. And if you send it to him with or without the person's name in it, the content of it is still just as useful to him. Right. But why should I have to eliminate the name? What difference does that make? It's a public record. Well, one of the things that the district court did find is that there are security concerns for the identification of individuals. So ---- Absolutely. We acknowledge that. But I have never done that. I've never been accused of that. I have never wrongfully identified anyone. What I'm talking about are public records. I am not allowed to ---- Mr. Wright, if you want us to write an opinion that relates not just to you, but to the next person who comes along who's in a similar situation. Well, I'll settle. I just don't see how ---- I'll settle for one just as advice to me, Judge, frankly. We can't. We don't have that funding. I understand. But I feel that the sanctity of the lawyer-client relationship has to be protected  And if 95 percent or 98 percent of my communications with Mr. Witherow are legally related, does that mean that if 2 percent are not, if I say, how's your mom, or if he asks me how this other case is going, does that mean that all of my communications with him are now non----- I don't think anybody is talking about redacting the sentence, how's your mom. No. But what I'm saying is that if it's a public document, it makes no sense whatsoever to force me to redact the names of a public document that Mr. Witherow should be and was allowed to write to the clerk of the court, may I have a copy of this order or this docket sheet. The clerk sends it to him. That's what happened in Byford. The Supreme Court clerk sent him a copy of the Byford decision. So he has it. Then when they try to resend it the second time, they won't give it to him because they say it, quote, doesn't belong to him. A public record and an opinion from a court belongs to everyone. That's why it's deemed a public record. And just because Mr. Witherow's name is not on it as a party doesn't mean that he should not be allowed to have an unredacted copy of that order. Okay. Thank you. A couple minutes. Thank you, Your Honor. I like it when Mr. Evans speaks. And therefore, that's why we don't file motions for contempt in court at this time. The more that gets out in the open, the more we find out about the case and the extent of this relationship. What we know is he is not sending in work related to their cases. It's for him to work on for Mr. Evans' benefit. He can't do that. And they've cited nothing that says he can. He says he's going to do it. Can he do it just on the basis of friendship if their hobby is talking law? If the inmate says, gee, you know, someday I may want to be a lawyer. I really like talking about the law. Can they just send in anything related to the law? Your Honor, if it's published, I would say send it to him. Discuss that case. And we are saying no limit on anything published. And there's no limit on anything related directly to his own ongoing cases, as far as you're concerned. We're going to say case law. Okay. Any cases. The problem is what we're getting is a multitude of motions or pleadings with other people's names on it that are now being litigated within the court. So we see these, and automatically, and on Mr. Witherow's own representation to Kelly Bellinger was, hey, I do all the legwork for Don Evans. I do the depositions. I do this. I do that. Okay. Well, then what is particularly troubling is when they write in their brief saying there's no quid pro quo relationship. Well, funny enough, 10 days before they filed that brief, I gave them Mr. Witherow's testimony where he says, yeah, Don Evans and mine relationship is quid pro quo. I do the legwork. Boy, that sounds awfully familiar. Again, I think we're getting to the findings of fact that weren't done. Okay. But, again, I would like to reaffirm that his access to the courts, he's got it. Okay. He's got a law library, law clerks, whatever. Thank you. You have your time. Thank you, Your Honors. Thank you. The case just argued is submitted for decision. We'll hear the last case for argument, Tri-Valley Cares v. Department of Energy.
judges: Schroeder, Graber, Holland